# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GBTI, INC.; GILL BROS. TRUCKING, et al., | ) | 1:09cv01173 LJO DLB |
| | ) | |
| Plaintiffs, | ) ) ) | ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES TO SPECIAL INTERROGATORIES, SET ONE, AND REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE |
| v. | ) ) | |
| INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, et al., | ) ) ) | |
| | ) | (Document 23) |
| Defendants. | ) ) | |

Plaintiffs GBTI, Inc., Gill Bros. Trucking, Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill ("Plaintiffs") filed the instant motion to compel further discovery responses on June 14, 2010. The matter was heard on July 16, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. Monrae English appeared on behalf of Plaintiffs. Jay Christofferson appeared on behalf of Defendant Insurance Company of the State of Pennsylvania ("ICSOP").

## **BACKGROUND**

Plaintiffs filed the instant action on May 29, 2009, in Fresno County Superior Court. On July 2, 2009, Defendants ICSOP and The American International Group Inc. dba The Truck Insurance Group, a Division of American International Group Risk Management ("Truck") removed the action to this Court.

According to the Complaint, in December 2004, Defendants issued to Plaintiff GBTI, Inc. a commercial automobile liability policy for the period of December 15, 2004 to December 15,

1  2005 (No. SFT407243601) ("Auto Policy") and a commercial general liability policy for the
2  period of December 30, 2004 to December 30, 2005 (No. SGL1807103) ("CGL Policy").  In
3  December 2004, Defendants also issued a commercial general liability policy to Gill Bros.
4  Trucking (No. SGL1807105) for the period from December 30, 2004 to December 30, 2005.

5  On August 14, 2005, a commercial tractor-trailer unit owned by Gill Bros. Trucking and
6  operated by GBTI, Inc. was involved in a multi-vehicle accident in Missouri.  After the accident,
7  there was a consolidated personal injury action in the Western District of Missouri, Case No.
8  4:06-cv-00286 (the "Nosker Lawsuit").  In March 2007, Plaintiffs made a formal tender of
9  defense and indemnity of GBTI, Inc. to Defendants.  ICSOP defended GBTI, Inc. and Gill Bros.
10 Trucking in the Nosker Lawsuit, and paid $750,000 in contribution to settlement of the
11 underlying case.  ICSOP did not defend the individual Gill brothers under either policy and they
12 were forced to retain private counsel.

13 The Complaint asserts causes of action for breach of contract and breach of the implied
14 covenant of good faith and fair dealing.  Plaintiffs seek general, consequential and punitive
15 damages.

16 On July 29, 2009, the Court (1) dismissed Defendant Truck from the action; (2) struck
17 allegations in the complaint addressing Gill Bros. Policy no. SGL1807105; and (3) struck the
18 punitive damages allegations, including paragraph 39 and the punitive damages prayer at page 9,
19 line 26.

20 On June 14, 2010, Plaintiffs filed the instant motion compel further discovery responses
21 from ICSOP.  The parties filed an incomplete joint statement on July 9, 2010, which was re-filed
22 on July 12, 2010.

23 **DISCOVERY BACKGROUND**

24 At issue are responses to Plaintiffs' Special Interrogatories, Set One, and Request for
25 Production of Documents, Set Two.  Plaintiffs served their discovery requests on February 23,
26 2010.  ICSOP responded with objections to Interrogatory No. 2 and Request for Production Nos.
27 9, 12, 16-18, 20-21, 23 and 26.
28

1  Between April and June 2010, the parties exchanged correspondence regarding discovery
2 issues.  Exhibits F-J to Joint Statement.  On June 30 and July 7, 2010, the parties conferred
3 telephonically and resolved several of the issues.  Thereafter, ICSOP served supplemental
4 responses.  Exhibits M and N to Joint Statement. The parties were unable to resolve the
5 remaining discovery issues.

6  **DISCUSSION**

7  By the instant discovery, Plaintiffs contend that they essentially seek (1) the identity of all
8 persons involved in the issuance of the Auto Policy; (2) the identity of persons involved in
9 making any changes to the Auto Policy; and (3) production of underwriting materials and files
10 and claim manuals regarding the insurance policies.

11  ICSOP counters that (1) the underwriting materials are irrelevant to the determination of
12 the individual Gill brothers' insured status; (2) it has agreed to produce responsive claims
13 manuals subject to a confidentiality/protective order; and (3) it has produced its claims file and
14 all relevant materials except those that are privileged.

15 A.  Scope of Discovery

16  Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery
17 regarding any nonprivileged matter that is relevant to any party's claim or defense–including the
18 existence, description, nature, custody, condition, and location of any documents or other tangle
19 things and the identify and location of person who know of any discoverable matter."

20 B.  Discovery at Issue

21   1.  **Special Interrogatory No. 2**

22  Special Interrogatory No. 2 seeks the identity of "any PERSON involved with the
23 issuance of" the Auto Policy.  ICSOP provided a supplemental response to this interrogatory
24 identifying two individuals, who were characterized at the hearing as "brokers."  Plaintiffs
25 confirmed at hearing that they were seeking the identification of persons involved with selling
26 the policy, i.e. brokers.  As ICSOP has provided the requested names, this discovery issue is
27 resolved and Plaintiffs' motion is DENIED AS MOOT.
28

## 2. Request for Production of Documents 9, 12, 23, and 26

Plaintiffs characterize these requests as seeking the production of the underwriting file and the applicable underwriting guidelines, manuals and other reference materials for issuance of the policy at issue. Plaintiffs contend that the underwriting information is relevant to bad faith and breach of contract actions. Freeman v. Allstate Life Ins. Co. 253 F.3d 533, 537 (9th Cir. 2001) (underwriting criteria relevant to materiality of plaintiff's representations where insurer rescinded insurance coverage due to plaintiff's false representation or concealment of information). Per Plaintiffs, the underwriting materials in this case are useful to interpretation issues and to provide information about the parties' intentions, and such files are quintessential in bad faith litigation. See, e.g., Glenfed Dev. Corp. v. Sup. Ct., 53 Cal.App.4th 1113, 1116 n.1 (1997) (noting that drafting history documents and claims manuals are clearly discoverable; reasonable expectations of the insured may be admissible at trial and even if claims manual is not, it may lead to discovery of other, relevant evidence); see also Rios v. Scottsdale Ins. Co., 119 Cal.App.4th 1020 (2004) (as to cause of action for negligent misrepresentation, underwriting file used by insurers to show what insurers communicated and to whom it was communicated).

The case centers on whether the policy at issue provides coverage to the individual Gill brothers. In relevant part, the Auto Policy states:

> **1. Who is An Insured**
> The following are "insureds":
> **a.** You for any covered "auto."
> \*\*\*
> **d.** The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":
> **(1)** Is being used exclusively in your business as a "trucker"; and
> **(2)** Is being used pursuant to operating rights granted to you by a public authority.
> **e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Exhibit L to Joint Statement. Plaintiffs explain that the Nosker Lawsuit alleged that the Gill brothers, as shareholders, should be held personally liable for the negligent and tortious acts committed by GBTI, INC. and GILL BROS. TRUCKING by piercing the corporate veil. As discussed at hearing, the Nosker Lawsuit also involved allegations that the Gill brothers were

4

negligent. Because the Nosker plaintiffs were attempting to hold the Gill brothers liable, Plaintiffs argue that they qualify as additional insureds. According to Plaintiffs, the underwriting files and materials are relevant to their contention that ICSOP improperly applied the terms of the policy, and will reveal ICSOP's inherently unreasonable interpretation of the policy terms. See, e.g., Pieper v. Commercial Underwriters Ins. Co., 59 Cal.App.4th 1008, 1016 -1017 (1997) (evidence regarding underwriters' requirements reflected intention of insurer to exclude certain risk); Lexington Ins. Co. v. Commonwealth Ins. Co., 1999 WL 33292943, 6 (N.D.Cal. 1999) (insurer required to produce all nonprivileged documents from underwriting files because they may be relevant to intent).

In opposition, ICSOP points out that underwriting materials may not always be relevant, such as where the terms of the insurance are clear. ICSOP cites Navigators Specialty Ins. Co. v. Howard Drywall, Inc., 2010 U.S. Dist. LEXIS 25614, at *11-12 (E.D.Cal. Mar. 18, 2010) (denying a Rule 56(f) request because the underwriting materials were irrelevant to the insurance coverage issues). Navigators involved discovery regarding coverage the insurer provided the insured four years earlier, not discovery regarding a current policy. The court denied the motion, reasoning that there had been no explanation of how the prior coverage showed a common intention by the parties to extend certain coverage under the current policy. Id. Here, Plaintiffs seek discovery of underwriting materials regarding the policy at issue, not previous insurance coverage.

ICSOP further argues that the underwriting materials are not relevant because the terms of the policy are not in dispute, and the complaint does not allege that the terms are ambiguous or are not what Plaintiffs sought by way of coverage. ICSOP contends that the basic principles of contractual interpretation apply and where possible the court infers intent solely from the written provisions of the written policy. See, e.g., Palmer v. Truck Ins. Exchange, 21 Cal.4th 1109, 1115 (1999); see also AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 821-822 (1990) (analysis of an insurance policy, like any other contract, is guided by the mutual intent of the parties, which is found, if possible, solely in the written provisions of the contract). ICSOP states that there are no

allegations that the Auto Policy is ambiguous and there is no cause of action to reform the policy. ICSOP further contends that parol evidence is not admissible "to show intention independent of an unambiguous written instrument." Sunniland Fruit v. Verni, 233 Cal.App.3d 892, 898 (1991).

As indicated in Sunniland, "[p]arol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous." Id. (emphasis added). Indeed, parol evidence is admissible to aid in the interpretation of coverage provisions but it cannot change the "plain meaning" of words used in the policy. Garcia v . Truck Ins. Exchange 36 Cal.3d 426, 435 (1984) (parol evidence rule does not exclude evidence: (1) of the circumstances under which the agreement was made; (2) to explain an extrinsic ambiguity; or (3) to otherwise interpret the terms of the agreement).

As Plaintiffs note, however, the test for discovery is not admissibility, but whether relevant evidence appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1) and 34(a) (applying scope to production of documents). At the discovery stage, the Court does not decide whether parol evidence will or will not be admitted to address interpretation of the policy. Instead, the Court finds that these discovery requests are relevant and may lead to the production of admissible evidence regarding interpretation of the policy terms.

Insofar as ICSOP argues that the documents seek proprietary information, the Court recognizes that ICSOP "has a legitimate interest in protecting its trade secrets and other confidential proprietary information." Westinghouse Elec. Corp. v. Newman & Holtzinger, 39 Cal.App.4th 1194, 1209 (1995). With an applicable confidentiality agreement/protective order to address ICSOP's concerns regarding proprietary information, however, the underwriting file and materials should be produced. Plaintiffs have indicated that they are amenable to such an agreement.

Based on the above, Plaintiffs' motion to compel with respect to Request for Production of Documents 9, 12, 23, and 26 is GRANTED, subject to the execution of an appropriate confidentiality/protective order.

**3.    Requests for Production Nos 16-18 and 20-21**

Generally, these requests seek the production of claims manuals relevant to the insurance policies at issue.  ICSOP has agreed to produce (1) AIG Domestic Claims Property and Casualty Best Practices and (2) AIG Domestic Claims Property and Casualty Claim Handling Guidelines subject to a confidentiality/protective order.  Plaintiffs seek assurance that these are the only responsive documents.

At the hearing, ICSOP represented that these are the applicable documents and Plaintiffs indicated they were amenable to a confidentiality/protective order.  Accordingly, this discovery issue has been resolved and Plaintiffs' motion as to these requests is DENIED AS MOOT.

**ORDER**

For the above reasons, Plaintiffs' motion to compel is GRANTED IN PART and DENIED IN PART AS MOOT.

IT IS SO ORDERED.

Dated:   **July 22, 2010**                                  /s/ **Dennis L. Beck**
                                                                        UNITED STATES MAGISTRATE JUDGE