IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GBTI, INC., GILL BROS. TRUCKING, HARNINDER GILL, HARJINDER GILL, CHARAN GILL, PAKHAR GILL and GURDIAL GILL,<br><br>Plaintiffs,<br><br>vs.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Defendant. | CASE NO. CV F 09-1173 LJO DLB<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

By notice filed on March 7, 2011, Defendant Insurance Company of the State of Pennsylvania moves for summary judgment, or in the alternative, summary adjudication against plaintiffs GBTI, Inc., Gill Bros. Trucking, Inc., Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill. Plaintiffs filed an opposition on March 24, 2011. Defendant filed a reply on March 31, 2011. Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument, and the hearing set for April 7, 2011 was VACATED. Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order

**INTRODUCTION**

This dispute arose out of an underlying personal injury action, *Nosker v. Gill Bros. Trucking, et al,* Case no. 06CV–26, United States District Court, Western District of Missouri ("*Nosker* action").

1

The *Nosker* action involved a multi-vehicle accident which named as defendants GBTI, Inc. and Gill Bros. Trucking, Inc. Plaintiffs in the *Nosker* action later amended their complaint naming as the individual defendants Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill, who are officers, shareholders and directors of GBTI and Gill Bros. Trucking. The plaintiffs in the *Nosker* action sought to pierce the corporate veil and hold each of the individuals personally liable. Defendant Insurance Company of the State of Pennsylvania ("ISOP") insured GBTI and Gill Bros. Trucking under a Commercial Auto Truckers Coverage Form policy and a Commercial General Liability policy. The individuals tendered their defense of the *Nosker* action to ISOP under the auto policy and the CGL policy.

## BACKGROUND

### The Parties

Plaintiffs Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill (collectively "Gill brothers") were officers, directors, shareholders and employees of plaintiffs GBTI, Inc. ("GBTI") and Gill Bros. Trucking, Inc. ("Gill Bros. Trucking"). GBTI is an interstate motor carrier, and GBTI and Gill Bros. Trucking owned, leased and operated trucking equipment.

Defendant Insurance Company of the State of Pennsylvania ("ISOP") is an auto and trucking insurer.

### The Policies

In December 2004, ISOP issued to GBTI a commercial automobile liability policy, numbered SFT 407243601 ("auto policy") and a commercial general liability policy, numbered SGL 1807103 ("CGL policy"). (See Doc. 54, Response Facts no. 23-24.)

### The *Nosker* Action

On August 14, 2005, a Gill Bros. Trucking tractor-trailer being driven by Donald Shearer, an employee of GBTI, was involved in a multi-vehicle collision in Missouri. The collision resulted in a consolidated personal-injury action in Missouri federal court, the *Nosker* action. In February 28, 2007, the plaintiffs in the *Nosker* action filed a second amended complaint to attempt to pierce the corporate veils of GBTI and Gill Bros. Trucking. The complaint alleged that the Gill brothers as "Shareholders should be held personally liable for the negligent and tortious acts committed by GBTI and Gill Truckers

and by agent/employee Donald R. Shearer."

In March 2007, plaintiffs tendered defense and indemnity of the underlying action to ISOP. ISOP defended GBTI and Gill Bros. Trucking, but declined to defend the Gill brothers. ISOP issued a declination letter on April 17, 2007, on the basis that the Gill brothers, either as individuals or as shareholders, were not insureds under the policies. Thereafter, the Gill brothers moved for dismissal in the *Nosker* action on the basis of lack of personal jurisdiction. The plaintiffs in the *Nosker* action argued personal jurisdiction existed over the Gill brothers because the Gill brothers' actions justified disregarding the corporate form of GBTI, over which the Court had jurisdiction. (Doc. 54, Response to Fact no.16.) The Court ruled insufficient evidence existed of violations of GBTI's corporate form to justify piercing the corporate veil. (Doc. 54, Response to Fact no.17.) The court dismissed the Gill brothers on January 11, 2008. The *Nosker* action was ultimately settled on April 2, 2008, with ISOP, on behalf of GBTI, Gill Bros. Trucking and Donald Sheareer contributing $750,000.

### Plaintiffs' Claims

This action is brought on behalf of GBTI, Gill Bros. Trucking and the Gill brothers. The complaint alleges that plaintiffs "were forced to retain private counsel to defend themselves" and "have incurred substantial costs attendant to the legal fees incurred" to defend the underlying action. The complaint alleges:

1. A (first) breach of contract claim that "Defendants breached their contractual obligations to the Plaintiffs under the terms of all of the stated Policies" by "failing to defend" plaintiffs in the underlying action; and

2. A (second) claim of tortious breach of the implied covenant of good faith and fair dealing.

The complaint seeks to recover legal fees and expenses incurred to defend the underlying action, attorney fees, and emotional distress. (Doc. 1-2, Complaint)

### ANALYSIS AND DISCUSSION

**A.  Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine

3

issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     Standards for Interpreting Insurance Contracts**

California's substantive insurance law governs in this diversity case. *State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 405 (9th Cir. 1989). California Insurance Code section 22 defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." "An insurance policy is, fundamentally, a contract between the insurer and the insured." *Stein v. International Ins. Co.*, 217 Cal.App.3d 609, 613, 266 Cal.Rptr. 72 (1990). "[N]on-insurer defendants [are] not parties to the agreements for insurance." *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576, 108 Cal.Rptr. 480 (1973).

Here, the auto policy is the sole insurance policy at issue in this motion. The parties agree that the CGL policy does not provide coverage.[1]

Further, the parties do not dispute that the applicable language in the auto policy is as follows:

---

[1] Plaintiffs acknowledge that coverage is not provided under the CGL policy. In their opposition, plaintiffs state "no contention is being made for coverage under the commercial general liability policy and the breach of contract and bad faith allegations arise out of ISOP's refusals to defendant Shareholders under the [auto] policy." (Doc. 53, Opposition p.3 n.1.) Thus, this motion addresses coverage only under the auto policy. To the extent that any claims against ISOP are based upon the CGL policy, the motion will be granted as to those claims, based upon plaintiffs' admission.

5

**Section II - Liability Coverage**

A.     Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" . . . caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

    **1.     Who is An Insured**

        **a.**     You for any covered "auto"

        . . .

        **e.**     *Anyone liable* for the conduct of an "insured" described above but only to the extent of that liability. (Underlined and italics emphasis added).

The court's initial focus in resolving a question of insurance coverage is always on the language of the insurance policy itself: "The rules governing policy interpretation require us to look *first* to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 18 (1995) (emphasis added); *see also City of Hope Nat. Medical Center v. Genentech, Inc.,* 43 Cal.4th 375, 395, 75 Cal.Rptr.3d 333, (2008) (Contract interpretation is solely a judicial function when "based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence".) Absent evidence indicating the parties intended a special usage, words used in an insurance policy should be interpreted in their "ordinary and popular sense." Cal.Civ.Code § 1644. In determining whether a policy provision has a "plain meaning," it must be read in the context of the entire policy: "The whole of a contract is to be taken together, so as to give effect to every part ... each clause helping to interpret the other." Cal.Civ.Code § 1641. Terms are to be interpreted "in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage.'" *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 647-648 (2003). Coverage clauses are interpreted to protect the objectively reasonable expectations of the insured. *AIU Ins. Co. v. Superior Court,* 51 Cal.3d, 274 Cal.Rptr. 820 (1990).

The parties do not contend that the relevant terms of the insurance contract are ambiguous.

6

1  Interpretation of clear and unambiguous provisions in a contract is a question of law for the court,
2  allowing summary judgment/adjudication. *See United States v. Sacramento Mun. Util. Dist.*, 652 F.2d
3  1341, 1344 (9th Cir. 1981). ISOP does not contend the insurance language is ambiguous. Plaintiffs do
4  not contend that the language of the insurance policy is ambiguous. Plaintiffs acknowledge that the term
5  "anyone liable" is the pertinent policy language.[2] Thus, as the language is not ambiguous, the Court's
6  interpretation is a question of law.

When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647-648. The mutual intention of the contracting parties at the time the contract was formed governs interpretation. Cal. Civ. Code §1636. "The parties' mutual intent is to be determined, if semantically possible, *solely* from the written provisions of the contract." *AIU Ins. Co. v. Sup.Ct., FMC Corp.*, 51 Cal.3d at 822; *Waller*, 11 Cal.4th at 18 (Such intent is to be inferred, if possible, solely from the written provisions of the contract); *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204 (2004) (same).

**C.   Breach Of Contract as to GBTI and Gill Bros. Trucking**

The corporations, GBTI and Gill Bros. Trucking, content ISOP breached the insurance contract as to them for failing to defend them in the *Nosker* action. ISOP argues there is no breach of contract as to the corporate entities, GBTI and Gill Bros. Trucking. ISOP argues that it defended the corporations in the *Nosker* action, and therefore any claim for failure to defend is meritless.

It is undisputed that ISOP provided a defense in the *Nosker* action to both GBTI and Gill Bros. Trucking. (Doc. 48, Senterfeit Decl. ¶5 ("ISOP defended GBTI, Inc and Bill Bros. Trucking in the *Nosker* action.")) It also is undisputed that ISOP provided settlement funds as to GBTI and Gill Bros. Trucking to settle the *Nosker* action. (Doc. 54, Response Facts no. 21.) ISOP paid the full applicable policy limit of $750,000 towards the overall settlement. (Doc. 48, Senterfeit Decl. ¶7.) The payment was in consideration for a release of GBTI, Inc., its officers, shareholders and directors, as well as Gill

---

[2] In their opposition, plaintiffs cite to case law which holds that an insurer has a duty to defend when a policy is ambiguous. Plaintiffs, however, do not contend the policy is ambiguous. (See Doc. 53, Opposition, p. 7 ("The [auto] Policy unambiguously states that the coverage is extended to 'anyone liability for' GBTI's conduct.") and p. 15 ("the policy language at issue in the present case is plain and clear.").)

7

Bros. Trucking's officers, shareholder and directors. (Doc. 48, Senterfeit Decl. ¶7.)

In their opposition to the motion, neither GBTI nor Gill Bros. Trucking argues that ISOP breached the contract as to them. Plaintiffs present evidence that GBTI, contributed $40,000.00 towards the settlement of *Nosker* to obtain a release of the shareholders. (Doc. 54, Response Facts no. 19.) Plaintiffs, however, do not argue how this $40,000.00 payment was a breach as to the duty owed to GBTI and Gill Bros. Trucking. ISOP provided a defense to GBTI and Gill Bros. Trucking. ISOP paid the full policy limit for settlement. Thus, plaintiffs have not raised an issue of fact on ISOP's possible breach of contract as to GBTI or Gill Bros. Trucking.

**D.     Breach of Contract as to the Individual Gill Brothers**

It is undisputed that the *Nosker* action sought to impose liability upon the Gill brothers by piercing the corporate veil on the basis of alter ego. (Doc. 54, Response to Fact no.16.) The complaint in the *Nosker* action alleged that "the Shareholders should be held personally liable for the negligent and tortious acts committed by GBTI and Gill Bros. Trucking and by agent/employee Donald R. Shearer." (Doc. 54, Response Facts no.13.)

**1.     Arguments of the Parties on Alter Ego**

ISOP argues that it did not breach its contract with the Gill brothers because it did not have a duty to defend the individual Gill brothers in the *Nosker* action. ISOP argues that alter ego cannot establish the Gill brothers as insureds under the auto policy. ISOP argues that the basis for piercing the corporate veil is the failure of the Gill brothers to comply with the corporate formalities. Conferring insured status where the officers and shareholders fail to comply with corporate formalities would reward the Gill brothers for harm to the public. ISOP refers to the Gill brothers' conduct as an abuse of the corporate form and not the kind of risk intended to be covered by the auto policy. (Doc. 47, Moving papers p.10.) Any potential liability imposed on the Gill brothers based on piercing the corporate veil is not liability derived from the automobile accident in the *Nosker* action, but based upon the alleged abuse of the corporate form.

The Gill brothers argue that they were "additional insureds" to the auto policy. The Gill brothers argue that the auto policy provides coverage for "**anyone** liable to the conduct of any insured." (Doc. 53, Opposition p.1) (Emphasis in Gill brothers' argument.) They argue that the language "anyone liable"

for GBTI's conduct applies to them because the *Nosker* action sought to hold the Gill brothers, as shareholders of GBTI, liable for GBTI's conduct in the accident. GBTI is the named insured under the auto policy, and that policy provides coverage to "anyone liable" for GBTI's conduct.

### 2. California Law on Alter Ego

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.*" Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 123 S.Ct. 1655 (2003). The corporate form can be disregarded, piercing the veil that separates corporations and their shareholders, only under rare circumstances, "in the case of fraud or certain other exceptional circumstances." *Dole Food*, 538 U.S. at 475, 123 S.Ct. 1655.

Under California law, the corporate form can be disregarded and the shareholder held liable for the corporation's actions when the corporation is merely the "alter ego" of a controlling shareholder. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824, 836 (2000). There are two general requirements for application of this doctrine:

> "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."

*Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601, 606 (1985).

California does not apply the "alter ego" doctrine to write an insurance policy to add insureds. *U.S. Fire Ins. Co. v. National Union Fire Ins. Co.*, 107 Cal.App.3d 456, 472 (1980). Piercing the corporate veil cannot be used to expand the contractual obligations of an insurer who contracted with the corporation to provide insurance. *American Home Ins. Co. v. Travelers Indem.*, 122 Cal.App. 3d 951, 966-67 (1981) (insurance company was not party to any inequitable conduct; it simply provided coverage. Alter ego may not be applied to rewrite a policy and add a party not intended to be insured).

### 3. Coverage for Vicarious Liability

ISOP argues that California courts have determined that policy language providing insured status to "anyone liable for the conduct of an 'insured'" means coverage only for vicarious liability, citing *American States Ins. Co. v. Progressive Casualty Ins. Co.,* 180 Cal.App.4th 18, 33 (2009). (Doc. 47, Moving papers p.12.)

In *American States*, the court interpreted the same insurance language and held that it applied only to persons "vicariously liable" for the named insured's negligence. In *American States*, a trucker was driving a tractor-trailer into the entrance to a construction site when the rear portion of the trailer ran over the plaintiff. Plaintiff sued the grading contractor on the construction project, the general contractor, and the developer, among others. The defendants tendered the suit to the insurance company for the trucker. The policy covered the insured and "**[a]nyone liable** for the conduct of an 'insured'." *American States,* 180 Cal.App.4th at 28 (emphasis added). The court held that the type of clause at issue, which it termed an "omnibus clause," covered as insureds those persons who were vicariously liable. *American States,* 180 Cal.App.4th at 33 ("the omnibus clauses at issue cover vicarious insureds.") The court noted that a standard automobile policy is "structured to encompass three broad categories of insureds: (1) the named insured (owner) of the specified auto(s), (2) permissive users, and (3) any person or organization legally responsible for the use of such automobile by the owner or permissive user [termed 'vicarious insureds']." *American States,* 180 Cal.App.4th at 33 (citations omitted). The Court found that the grading contractor, general contractor, and developer were potentially vicariously liable for the accident under the peculiar risk theory, because these defendants legally were responsible for the condition of and access to the construction site. The court held that the liability insurers for a tractor-trailer driver owed a duty to defend the grading contractor, general contractor, and developer, since the contractors and developer were potentially vicariously liable.

Here, the auto policy contains the same language as that interpreted in *American States*. The auto policy provides for coverage for "[a]nyone liable for the conduct of an 'insured'." Thus, this language would apply to persons who would be vicariously liable for the insured.

The Gill brothers attempt to distinguish *American States* on the basis that *American States* does not preclude extending coverage. (Doc. 53 Opposition p.8.) The Gill brothers argue that auto policy language is broad and unlimited and provides coverage for "anyone liable" for GBTI's conduct. The Gill brothers note that *American States* does not hold the vicarious liability is the only theory of liability for which the language extends coverage. (Doc. 53, Opposition, p.8.) They argue that the language is not limited to any particular theory of liability. The Gill brothers argue that alter ego theory is a form of vicarious liability, citing *Doney v. TRW, Inc.*, 33 Cal.App.4th 245, 39 Cal.Rptr.2d 292 (1995 ). "Alter

ego is essentially a theory of vicarious liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." *Doney*, 33 Cal.App.4th at 249.

"Vicarious liability" cannot be equated with the wrongful conduct connected with "alter ego" liability. Piercing the corporate veil involves some abusive conduct by the individual shareholders which justifies ignoring the corporate formalities. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539, 99 Cal.Rptr.2d 824, 837 (2000) (" The alter ego doctrine . . . affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.") Piercing the corporate veil requires more than a unity of interests; it also requires some inequity arising out of the use of the corporate form. *In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626, 636 (9th Cir. BAP 2004). In order to enforce the alter ego theory bad faith must be shown. *United States Fire Ins. Co v. National Union Fire Ins. Co.*, 107 Cal.App.3d 456, 470 (1980). *See also Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal.App.4th 1189, 120 Cal.Rptr.3d 303, 310 (2011) ("In applying the alter ego doctrine, the issue is . . . whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case.") Thus, piercing the corporate veil requires a showing that the corporate alter egos acted deceptively or in bad faith.

The case relied upon by plaintiffs, *Doney v. TRW,* is consistent with these concepts and does not assist the Gill brothers. In *Doney*, heirs of an employee killed in a murderous office rampage sued the parent corporation and the subsidiary in tort after collecting workers' compensation benefits. *Id.* at 247-48, 39 Cal.Rptr.2d 292. The corporate parent could not be held vicariously liable under alter ego doctrine for damages suffered by subsidiary's employees in course of employment, because the subsidiary satisfied its obligations to employees by securing payment of workers' compensation benefits. The Court noted that, "[t]he alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Doney*, 33 Cal.App.4th at 249. The Court held that the corporate parent was not using the corporate form unjustly which would warrant piercing the corporate veil.

Here, the *Nosker* action sought to hold the Gill brothers liable for independent wrongful conduct of ignoring the formalities of the corporate form. Corporate officers ultimately may be vicariously liable for the corporations acts, but **first**, the officers must engage in their own bad faith or deceptive acts. "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." *Shaoxing County*, 120 Cal.Rptr.3d at 310. The officers must ignore the corporate formalities of the corporation. This is a significant step removed from the vicarious liability typically the subject of an "omnibus" clauses. Vicarious liability of an employer or principal is not based on fault. *See e.g.*, *Lathrop v. Healthcare Partners Medical Group*, 114 Cal.App.4th 1412, 1423, 8 Cal.Rptr.3d 668, 675 (2004). The liability the Gill brothers faced in the *Nosker* action was not vicarious liability for the automobile accident. Rather, their liability was premised upon their own failure to maintain the requisite corporate formalities. Only through separate wrongdoing by the Gill brothers would they face potential liability in the *Nosker* action.

The risk of separate corporate wrongdoing is not the risk insured in an auto policy. The auto policy insured against the risk of harm from the operation of an "auto." (Doc. 54, Response Facts no. 24.) The auto policy did not insure against the risk of harm from corporate officers misusing the corporate entities. Extending insured status to the Gill brothers based on their alleged failure to follow corporate formalities would sanction an alleged form of fraud, and extend policy coverage beyond traditional vicarious liability.

**E.    Breach Of Implied Covenant Of Good Faith And Fair Dealing**

ISOP argues that it is not subject to a claim for breach of implied covenant of good faith and fair dealing where it did not have a duty to defend.

In the previous section, the Court found that ISOP did not breach any duty regarding coverage as to any plaintiff. In light of the Court's ruling on the insurance coverage issue as to all plaintiffs, the plaintiffs cannot prevail on breach of the covenant of good faith and fair dealing.

/////

**CONCLUSION**

For the foregoing reasons, the Court makes the following findings and GRANTS defendant Insurance Company of the State of Pennsylvania's motion for summary judgment as follows:

1. The Court finds that coverage was not afforded under the ISOP auto policy to Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill as additional insureds for the claims and action against them in the *Nosker* action.

2. The Court finds that coverage was not afforded under the commercial general liability policy to Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill for the claims and action against them in the *Nosker* action.

3. The Court finds that ISOP did not breach its duty to defend GBTI, Inc.

4. The Court finds that ISOP did not breach its duty to defend Gill Bros. Trucking, Inc.

5. The Court finds that ISOP did not breach its implied duty of good faith and fair dealing as to GBTI, Inc., Gill Bros. Trucking, Inc., Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and/or Gurdial Gill.

6. The Court grants summary judgment in favor of Insurance Company of the State of Pennsylvania and against GBTI, Inc., Gill Bros. Trucking, Inc., Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill.

7. DIRECTS the clerk to enter judgment in favor of defendant Insurance Company of the State of Pennsylvania and against GBTI, Inc., Gill Bros. Trucking, Inc., Harninder Gill, Harjinder Gill, Charan Gill, Pakhar Gill and Gurdial Gill.

8. All dates are vacated, including the July 5, 2011 trial and the May 17, 2011 pretrial conference.

IT IS SO ORDERED.

**Dated:   April 5, 2011**             /s/ Lawrence J. O'Neill
                                       UNITED STATES DISTRICT JUDGE